IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELVIN DANIELS,** et al. | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case No. 2:23-cv-3895-JDW |
| | : | |
| **EARNEST BLAIR,** et al., | : | |
| Defendants. | : | |

## MEMORANDUM

Kelvin Daniels and Danee Slaton, husband and wife, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that various defendants associated with the Philadelphia Department of Prisons ("PDP") violated their constitutional rights while they were housed in various Philadelphia correctional institutions. I will grant them leave to proceed *in forma pauperis*, and I will dismiss their Complaint in part. I will give them an opportunity to file an amended complaint or proceed on the claims that pass statutory screening.

**I.     BACKGROUND**

The Complaint names twenty-three Defendants:[1] (1) Earnest Blair; (2) D. Reeder; (3) Lt. Radke; (4) C/O Slack; (5) Lt. Hilty; (6) Captain Hamilton; (7) Sergeant Dick; (8) Lt. Reid; (9) Sergeant Nunez; (10) C/O Marlow; (11) Sgt. Q. Thomas; (12) Lt. Baldwin; (13) Lt.

---

[1] Although the docket lists sixteen defendants, all of whom are named in the body of the Complaint, Plaintiffs list additional defendants in the Complaint's caption and include allegations about these additional Defendants in the body of the Complaint.

Hill; (14) R. Lewis; (15) Sergeant T. Harris; (16) the City of Philadelphia; (17) C/O Hernandez; (18) C/O Golden; (19) Sgt. Lite; (20) C/O Mendes; (21) C/O Morrison; (22) Major Brooker; and (23) Blanche Carney. (Compl. at 1-3.[2]) All Defendants are associated with the PDP. (*Id.*)

Plaintiffs' Complaint consists of the completed standard form complaint and eight additional handwritten pages. The handwritten portion is difficult to understand. Plaintiffs' stream-of-consciousness style writing often blends time frames, locations, actors, and constitutional harms such that at times it is difficult to discern what happened to them, where it happened, by whom, and what claims they seek to bring. In addition, Plaintiffs frequently state in conclusory fashion that certain constitutional rights were violated without providing any factual support. Affording Plaintiffs the most liberal construction of the Complaint, I understand Plaintiffs to allege that various PDP officials violated their constitutional rights in retaliation for filing grievances. The allegations cover a time frame from approximately July 2022 through June 2023. Plaintiffs state that the events alleged in the Complaint took place at various PDP facilities, including the Curran-Fromhold Correctional Facility ("CFCF"), the Detention Center, the Philadelphia Industrial Correctional Center ("PICC"), and the Riverside Correctional Facility ("RCF"),

---

[2] Citations are to the pages that the CM/ECF system has assigned to the documents compiled as the Complaint.

which housed the Alternative Special Detention Modular Unit ("ASD Mod III").[3] (*Id.* at 3, 16.)

In January 2022, Mr. Blair "tried to extort" Plaintiffs by encouraging them to buy a phone from him. After they refused, Mr. Blair "wrote [them] up for using a cell phone." (*Id.* at 5.) In April 2022, Plaintiffs were both in the restricted housing unit ("RHU") at PICC. They submitted a grievance about Mr. Blair's attempt to sell them a cell phone. After submitting the grievance, Mr. Blair and the "cert team," which included Defendants Sgt. Nunez and Ofc. Marlow, went to Mr. Daniels' cell in the RHU and started "punching and kicking" him while he was wearing handcuffs. (*Id.*) The officers said to Mr. Daniels, "this is what we do to rats." (*Id.*) Ofc. Golden visited Ms. Slaton at her cell in the RHU and "sprayed [Ms. Slaton] with pepper spray" while exclaiming that prison officials "hate Muslim rats." (*Id.*) Ofc. Golden also read Ms. Slaton's mail from Mr. Daniels aloud to try to "mock [and] humiliate her." (*Id.*) In July 2022, the Plaintiffs submitted a grievance alleging that their time in RHU was longer than what was permitted as a disciplinary measure by the prison handbook.

Separately, Ofc. Hernandez "interfer[ed] with [Plaintiffs'] mail to one another" and "interfered with legal mail to the Courts." (*Id.* at 6.) This interference caused them to miss deadlines and prevented them from being "properly prepared for [their] legal defense in trial." (*Id.*) Plaintiffs also complained more generally about prison staff

---

[3]

opening and reading legal mail without them being present and that they missed appeal deadlines and did not get discovery transcripts to prepare for their case.

The PICC Warden approved their transfer to ASD Mod III, but it is not clear when that transfer occurred. In November 2022, in response to a grievance Plaintiffs submitted about the retaliatory excessive force to which they were subjected at the PICC RHU, Mr. Blair, Sgt. Nunez, Ofc. Marlow, and Sgt. Dick visited Mr. Daniels and Ms. Slaton at ASD Mod III "to harass" them. (*Id.* at 8.) One of them told Plaintiffs, "y[']all cannot hide from us, we are going to fuck y[']all[']s life up." (*Id.*) Ofc. Marlow, Lt. Radtke, Sgt. Dick, and Ofc. Slack later visited Mr. Daniels in the law library, although it is unclear whether this also occurred at ASD Mod III or at another facility and whether the visit was also motivated by grievances filed by Plaintiffs. (*Id.*) Defendants "threatened" Mr. Daniels and told him that if he said anything to the courts, they would kill him and Ms. Slaton. (*Id.*) One of the prison officials put "handcuffs on real tight on top of [Mr. Daniels'] wrist [which was already] dislocated." (*Id.*; *see also id.* at 9.)

In April 2023, Lt. Reid took legal discovery from Mr. Daniels' cell during a search and made a photocopy of it. That same day, Mr. Blair, Sgt. Nunez, Lt. Radtke, and Sgt. Dick searched Mr. Daniels' cell four times "looking for discovery to take" from him to "stop [Mr. Daniels] from pursuing [a] lawsuit." (*Id.*)

At some point (possibly in November 2022), Mr. Daniels was transferred to CFCF. (*Id.* at 9.) Plaintiffs allege that in March 2023, Mr. Blair and Sgt. Nunez visited Mr. Daniels

at the CFCF law library and told him he did not work there, even though he did. (*Id.*) They told Mr. Daniels they "do not like Muslim rats" and then "dragged [him] back to [his] cell after reading his legal work." (*Id.* at 9.) Mr. Daniels was sent to RHU around this time and released after ten days. The Complaint is silent as to the reason he was sent to RHU. At some point in April or May 2023, Mr. Daniels and Ms. Slaton were transferred again. Mr. Daniels was transferred to the Detention Center and then to RCF, and Ms. Slaton was transferred to the Detention Center. (*Id.*) During his transfer to RCF, Mr. Daniels was told the jail was going to keep his $400 and his religious clothes.

Plaintiffs also allege generally that the conditions in which they were confined at each of the PDP facilities violated their constitutional rights. Mr. Daniels states that he was locked in a cell for more than three days at a time and not allowed to come out for four to five hours a day. In addition, Plaintiffs allege that they were "forced to live in filthy, infested cells with rats, cockroaches, snakes, [and] spiders." (*Id.* at 12.) Plaintiffs also repeatedly allege that they were subjected to discrimination for being Muslim and "treated bad because of religion." (*Id.* at 5-8.)[4]

---

[4] Attached to the Complaint is an inmate misconduct report for Mr. Daniels dated May 8, 2023, which states that officials confiscated "unauthorized clothing" including "Muslim Garbs." (Compl. at 13.) Plaintiffs make no reference to this misconduct report in the Complaint and do not appear to allege that their ability to practice their religion was disturbed, whether through clothing restrictions or by other means.

Based on these allegations, Plaintiffs assert various constitutional claims. They seek money damages and an injunction against Defendants' "retaliatory conduct." (*Id.* at 17.)

## II.  STANDARD OF REVIEW

Plaintiffs seeking leave to proceed *in forma pauperis* must establish that they are unable to pay for the costs of her suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, it must determine whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When plaintiffs are proceeding *pro se*, I construe their allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III.    ANALYSIS

#### A.    *In Forma Pauperis*

Mr. Daniels and Ms. Slayton have provided the required information to demonstrate that they do not have the ability to pay the required fees, so I will grant them leave to proceed *in forma pauperis*. Because they were and are prisoners, they will still have to pay the required filing fee. *See* 28 U.S.C. § 1915(b).

#### B.    **Plausibility Of Claims**

Plaintiffs' constitutional claims arise pursuant to Section 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

##### 1.    **Excessive force and First Amendment retaliation**

Plaintiffs allege that they were subjected to excessive force when housed in the RHU at PICC in retaliation for submitting a grievance about Mr. Blair's attempts to sell them a cell phone. They also allege that they were retaliated against for submitting a grievance about the excessive force. Because Plaintiffs were pretrial detainees at the

time, the Due Process Clause of the Fourteenth Amendment governs their excessive force claims. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). To state a due process violation based on excessive force, a detainee must allege facts to suggest plausibly "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

To assert a plausible First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). A prisoner's filing of a grievance constitutes constitutionally protected conduct. *See id*.

Mr. Daniels alleges that while he was in handcuffs, Mr. Blair, Sgt. Nunez, and Ofc. Marlow started "punching and kicking" him while telling him, "this is what we do to rats." (Compl. at 6.) Ms. Slaton alleges that Ofc. Golden sprayed her with pepper spray while exclaiming that they "hate Muslim rats." (*Id.*) Plaintiffs allege that this conduct was

in response to a grievance they filed concerning Blair's attempts to sell them a cell phone in prison. Based on Plaintiffs' allegations, Mr. Daniels has stated plausible excessive force and retaliation claims against Mr. Blair, Sgt. Nunez, and Ofc. Marlow, and Ms. Slaton has stated plausible excessive force and retaliation claims against Ofc. Golden. In addition, Plaintiffs allege that Mr. Blair, Sgt. Nunez, Ofc. Marlow, and Sgt. Dick visited Mr. Daniels and Ms. Slaton at ASD Mod III in response to their grievance about the alleged excessive force. Defendants harassed and threatened Plaintiffs, asking them if they filed more grievances, calling them "Muslim rats," and telling them they were going to "fuck [their] life up." (Compl. at 8.) Based on these allegations, Plaintiffs have stated a plausible retaliation claim against Mr. Blair, Sgt. Nunez, Ofc. Marlow, and Sgt. Dick based on their conduct directed towards Plaintiffs at ASD Mod III.

      Plaintiffs also allege that Ofc. Marshall, Lt. Radtke, Sgt. Dick, and Ofc. Slack visited Mr. Daniels in the law library at an unspecified prison facility and "threatened" to kill him and Ms. Slaton if Plaintiffs "said anything to the Courts." (Compl. at 8.) To the extent Plaintiffs intended to assert a retaliation claim based on these allegations, they have failed to do so. It is not clear when this alleged visit took place, where it occurred, and whether Plaintiffs' grievances of other protected activity motivated it in any way. Accordingly, I will dismiss without prejudice Plaintiffs' retaliation claims asserted against Marshall, Radtke, Dick, and Slack. I will also dismiss Plaintiffs' allegations that an unnamed prison official put handcuffs tightly on Mr. Daniels's injured wrists because the

Complaint does not allege any facts to tie this vague allegation to any named Defendant.

### 2. Interference with legal mail and access to courts

Prisoners have protected First Amendment interests in both sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989). However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Id*. at 407 (quote omitted). To state a plausible interference with legal mail claim, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *See id.* Nonetheless, isolated incidents of interference without evidence of an improper motive are insufficient to establish a First Amendment violation. *See Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

Plaintiffs allege that prison officials interfered with their legal mail and opened it outside of their presence, but they do not allege that any Defendant was personally involved in the interference. They also make no allegation that the interference was part of a pattern and practice. Although they allege that Ofc. Hernandez interfered with their legal and personal mail, they provide no factual support for this conclusory statement, including when and how he did so. Without at least a modicum of factual specificity, I

conclude that Plaintiffs have failed to state a plausible claim of interference with legal mail under the First Amendment. I will therefore dismiss the claims about interference with legal mail without prejudice.

Plaintiffs also fail to state a plausible access to courts claim based on Defendants' alleged interference with their legal mail. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). To state a claim for denial of access to courts, a plaintiff must show that he suffered "an actual injury" because some prison official's access hindered his claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Actual injury occurs when a prisoner shows that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Plaintiffs do not provide sufficient facts about the alleged interference with their legal mail, including when and how often it happened and who was involved. They just state that that their ability to present a defense to their criminal charges was affected. Also, Plaintiffs do not allege an actual injury that resulted from the alleged interference. They state only that they missed deadlines but provide no specific facts about whether missing those deadlines impacted their ability to defend themselves at trial. Such vague and generalized allegations are not sufficient to state a plausible claim. In fact, it appears from the public record that Plaintiffs had legal counsel during their criminal proceedings. Plaintiffs cannot state a plausible claim for denial of access to courts if they

were represented by counsel during their criminal case because their lawyer would have been able to make the requisite filings. To the extent Plaintiff are alleging that Defendants engaged in any acts to prevent them from filing this or other civil lawsuits, they have not articulated how the Defendants' actions interfered with their ability to bring their claims. I will therefore dismiss Plaintiffs' access to courts without prejudice.

### 3. Due process claims based on placement in RHU

Plaintiffs appear to also assert a due process claim based on their placement in the RHU at PICC. They submitted a grievance because their time there extended beyond what was permitted for "disciplinary action" in the prison handbook. (Compl. at 5.[5]) Prison officials' "restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quote omitted).

"Punishment" in this context refers to "punishment of a pretrial detainee for his alleged criminal conduct, committed *prior* to his detention, for which he has not yet

---

[5] Although Mr. Daniels alleges that on a different occasion, he spent time in the RHU at CFCF, he does not appear to base any due process or other constitutional claims on that placement. In any event, if he did intend to bring such claims, they are too vague and undeveloped to be plausible.

12

been committed." *Id.* (emphasis in original). It does not refer to punishment of a pretrial detainee "for his in-facility conduct." *Id.* at 505. In other words, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).

While "pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement." *Bistrian v. Levy*, 696 F.3d 352, 375 (3d Cir. 2012). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

To the extent Plaintiffs assert a due process claim based on their "prolonged" stay in the RHU at PICC, the claim lacks detail. Plaintiffs have not provided sufficient facts about their alleged confinement, including when it took place, for how long, and the

13

circumstances surrounding their placement there. They also fail to allege whether any process was provided to them for the segregation and why they believe the process provided was inadequate. *See King v. Quigley*, No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019). Plaintiffs' due process claims also fail because they have not alleged any facts specifically tying such claims to a named Defendant. I will therefore dismiss Plaintiffs' due process claims without prejudice.

### 4. Equal protection

Plaintiffs aver that their Muslim religion caused the discrimination against them, which I interpret as an equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quote omitted). To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016). To be similarly situated, persons must be alike in all relevant respects, but need not be identically situated. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

Plaintiffs' equal protection claim does not have enough detail. While they assert that they were treated unfairly due to their Muslim religion, they do not allege how they were treated unfairly *because of* their religion. I understand their allegations about harassment and excessive force to be retaliatory in nature – in response to their filing grievances – and not discriminatory on account of their religion. They also do not allege that other similarly situated detainees were treated differently or that any selective treatment was intended to prevent them from exercising a fundamental right. Finally, Plaintiffs do not tie any specific mistreatment to a named Defendant. *See Rode*, 845 F.2d at 1207. Accordingly, I will dismiss Plaintiffs' equal protection claims without prejudice.

### 5. Claims against Commissioner Carney and the City

To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell*, 441 U.S. at 538. "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light

of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68). Courts should consider the totality of the circumstances in evaluating such a claim. *Id*. Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotations omitted).

Plaintiffs allege that they were "locked" in their cells for more than three days at a time and not allowed to come out for four to five hours a day. They also allege that they were forced live in "condemned" prisons with "filthy infested cells" with rats, cockroaches, snakes, and spiders. (Compl. at 12.) Plaintiffs' claims about their confinement in their cells and the alleged unsanitary conditions at the Philadelphia prisons fail as pled because Plaintiffs have not tied any Defendant's specific conduct to the alleged constitutional violations. The claims also fail because they are vague and factually undeveloped. Plaintiffs do not allege any specific facts about the conditions to which they were exposed, including at what prison, and for how long. Their allegations, without more, fail to raise an inference that the conditions were intended as punishment.

To the extent that Plaintiffs name Blanche Carney as a Defendant due to her high-ranking position as the Commissioner of the PDP, this is also not sufficient to state a plausible claim. "Each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Plaintiffs' factual allegations do not raise a plausible inference of supervisor liability against Commissioner Carney. I will therefore dismiss all claims against Commissioner Carney without prejudice.

I will also dismiss the claims against the City of Philadelphia. Nothing in the Complaint suggests that the conditions of confinement of which Plaintiffs complain resulted from a Philadelphia policy or custom. *See Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Without those allegations, the City cannot be liable.

17

**6.     Claims mentioned in passing**

The Complaint refers to several other constitutional provisions and tort law concepts that do not relate to any of the factual allegations in the Complaint. These include passing references to extortion, slander, strip searches, and abuse of authority. To the extent that Plaintiffs intended to assert claims based on these references, they have not provided any facts to support them. A "passing reference to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). To the extent Plaintiffs try to assert claims against individuals who I have not discussed, those claims lack enough detail for me to discern what they are, so I will dismiss them as implausible. To the extent Plaintiffs believe I overlooked or misconstrued any claims, they have an opportunity to reassert them in an amended complaint.

**7.     Injunctive relief**

Mr. Daniels and Ms. Slaton have both been transferred out of the PDP facilities. Therefore, their request for injunctive relief is moot. *See Robinson v. Cameron*, 814 F. App'x 724, 725 & n.3 (3d Cir. 2020) (citing *Spencer v. Kemna*, 523 U.S. 1, 7-14 (1998)) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody).

## IV.    CONCLUSION

I will grant Mr. Daniels and Ms. Slaton leave to proceed *in forma pauperis*. After screening their Complaint, I will permit them to pursue their excessive force and First Amendment retaliation claims against Mr. Blair, Sgt. Nunez, Ofc. Marlow, Ofc. Golden, and Sgt. Dick. I will dismiss the rest of their claims without prejudice. I will grant Mr. Daniels and Ms. Slaton leave to file an amended complaint in the event they can cure the defects I have identified. Alternatively, they may tell the Court that they seek to proceed only on the claims that pass statutory screening. An appropriate Order follows, which provides further instruction on Plaintiffs' options for proceeding.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

March 27, 2024